**Thomas FARRAR, Appellant,**

v.

**SABINE MANAGEMENT CORPORATION a/k/a Sabine Properties Management, Inc. and Northwest Building, Ltd., Appellees.**

No. 01–09–00492–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 11, 2011.

Rehearing En Banc Overruled Oct. 31, 2011.

---

Loren G. Klitsas, Jeanine Elaine Holoye, Klitsas & Vercher, P.C., Timothy A. Hootman, Houston, TX, for Appellant.

J. Preston Wrotenbery, David Klosterboer & Associates, Ruth E. Piller, Hays, McConn, Rice & Pickering, P.C., Houston, TX, for Appellees.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant Thomas Farrar challenges the no-evidence summary judgment rendered in favor of appellees Sabine Management Corporation a/k/a Sabine Properties Management, Inc. ("Sabine") and Northwest Building, Inc. ("Northwest"). Farrar, a postal worker, sued Sabine and Northwest after he slipped and fell while delivering mail at one of their properties. In his sole issue, he contends that the trial court erred in granting the motion because the evidence raised a genuine question of material fact as to each element of his claim.

We reverse and remand for further proceedings.

## Background

Sabine and Northwest were responsible for the day-to-day management and maintenance of an office building located at 13111 Northwest Freeway in Houston, Texas. Sabine employed property manager Lori Marshall and maintenance engineer Terry Elkins to conduct daily property-safety inspections and routine maintenance. Marshall hired a company called ACI to evaluate the facility's compliance with the Americans with Disabilities Act ("ADA"). Based on ACI's recommendations, Marshall or her employees would make improvements to the building to comply with the ADA. Farrar, a United States postal worker, routinely made deliveries to the building. In the normal course of a delivery, he would park his postal truck, load mail onto a dolly, and wheel the dolly up a wheelchair ramp located near the southeast entrance to the building.

Approximately three weeks before Farrar's fall, ACI instructed Marshall to paint the wheelchair ramp located near the building's southeast entrance with a contrasting color to make it more visible. Marshall purchased "safety paint" from a hardware store. The store employees advised Marshall that she should mix sand or gravel with the paint before painting the outdoor surface to create traction and prevent slipping. Marshall mixed some sand in with the paint and proceeded to paint the wheelchair ramp a contrasting color. After the paint dried, she tested the slipperiness of the ramp by walking on it. Likewise, Elkins had several opportunities to walk up and down the ramp after Marshall painted it, but neither Marshall nor Elkins could recall a specific time when they walked on the ramp when it was wet from rain or other precipitation.

Around 10:00 a.m. on a drizzly day in March 2004, Farrar was making a special delivery to the building. He parked his postal truck and walked toward the southeast entrance carrying a single package and a hand-held scanning device. As he was walking up the wheelchair ramp, he slipped and fell, hitting his head on the ground and injuring his shoulder. He lay on the ground for several minutes but was eventually able to get up. He noticed that his clothing was damp, but he did not immediately complain about any pain or injuries. Farrar picked up the package and his scanner and walked inside the building. He told Marshall that he had slipped and fallen on the wheelchair ramp, and she told him that earlier that morning, a man checking the building's fire alarm system had also slipped on the ramp. After talking with Marshall for several minutes, Farrar delivered the package he was carrying and left the building.

Following the incident, Farrar returned to the postal station and completed an accident form. He met with a supervisor who confirmed that he was wearing slip-resistant postal shoes and sent him to a medical clinic. The supervisor also sent someone to investigate the incident. The post office investigator returned to the building and photographed the area where Farrar had fallen. The photographs showed that the ramp had been barricaded on the day of the incident, and Farrar stated that when he returned to work almost two weeks later the ramp was still barricaded and its surface had been covered with sand. Marshall and Elkins stated that the ramp was later repainted and that more sand was added to the paint mixture in order to prevent subsequent falls.

After the fall, Farrar complained of pain in his lower back and left shoulder. He sued Sabine and Northwest for premises liability. Sabine and Northwest filed a no-evidence motion for summary judgment, to which Farrar filed a response. Farrar attached to his first response a portion of Marshall's deposition testimony, his own sworn affidavit, and an accident form completed by Marshall. Sabine and Northwest filed an amended no-evidence motion, arguing that they were entitled to summary judgment because Farrar could offer no evidence to prove (1) that Sabine and Northwest had actual or constructive knowledge of a harmful condition on the premises; (2) that the condition posed an unreasonable risk of harm, (3) that Sabine and Northwest failed to exercise reasonable care; or (4) that Sabine and Northwest's negligence was the proximate cause of Farrar's injuries.

Farrar filed a response to the amended motion in which he argued that there was enough evidence to raise a genuine issue of material fact as to each of the challenged elements. He attached transcripts from Marshall's and Elkins' depositions, as well as a transcript from his own deposition to his response. Sabine and Northwest did not object to any of the attached deposition testimony. After considering all the evidence, the trial court granted Sabine and Northwest's motion. On appeal, Farrar argues that the trial court erred in granting summary judgment because he raised an issue of material fact as to each of the challenged elements.

## Analysis

We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). A no-evidence motion for summary judgment is essentially a pre-trial directed verdict, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003).

In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.-Houston [1st Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. Tex.R. Civ. P. 166a(i). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.; Forbes, Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *Forbes*, 124 S.W.3d at 172. "More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions." *Id.* As with a traditional summary judgment, we view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Chapman*, 118 S.W.3d at 751.

In this case, Farrar argues that the trial court erred in granting Sabine and Northwest's no-evidence motion for summary judgment because his response and the attached deposition testimony raised a question of material fact as to each of the challenged elements of his claim. Sabine and Northwest argue that the motion was properly granted because Farrar failed to offer more than a scintilla of relevant evidence to establish a claim for premises liability.

■ It is undisputed that Farrar was Sabine and Northwest's invitee. Accordingly, to recover damages for premises liability, Farrar must establish that the premises owner-operator had actual or constructive knowledge of a dangerous condition on the premises that presented an unreasonable risk of harm and that the condition proximately caused his injuries. *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex.2007). The standard of care required of the owner-operator toward its invitees is the ordinary care that a reasonably prudent person would exercise under the same or similar circumstances. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983). While a premises owner-operator is not an insurer of its invitees' safety, it must protect invitees from conditions on the property that present an unreasonable risk of harm. *Brinson Ford*, 228 S.W.3d at 163 (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex.2000)). As such, Sabine and Northwest owed Farrar a duty to exercise reasonable care to protect him from known or reasonably discoverable dangerous conditions on the property. *See Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998).

### 1. Actual or constructive knowledge

■ Sabine and Northwest argue that Farrar presented no evidence that they had actual or constructive knowledge of a dangerous condition on the property and that there is no evidence of any prior incident that occurred on the painted wheelchair ramp surface. In his response, Farrar argued that there was evidence that Sabine and Northwest and its agents, Marshall and Elkins, knew or should have known that the painted wheelchair ramp was slippery when wet from rain or other precipitation. Farrar argued that Marshall knew that the paint needed to be mixed with gravel or sand in order to give the painted surface traction but that she only tested the slipperiness of the ramp under dry conditions. He contends that it

was drizzling that morning, that Marshall and Elkins should have known that the painted surface was slippery when wet, and that proper inspection of the ramp— by testing it in both dry and wet conditions—would have revealed the dangerous condition. He also contends that Marshall told him that someone else had slipped on the ramp that morning before he did.

As a threshold requirement in a premises liability claim, the plaintiff must prove that the defendant had actual or constructive knowledge of a premises defect. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex.1996). A plaintiff may prove notice by establishing that the defendant actually knew that the condition was dangerous or that it is more likely than not that the condition existed long enough to give the owner-operator a reasonable opportunity to discover it. *See Wal–Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex.2002). While there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, a relevant consideration is whether the owner-operator has received prior reports of the danger presented by the condition or prior reports of injuries. *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex.2008) (citing *Brinson Ford*, 228 S.W.3d at 163). Additionally, "[t]he fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge." *Rice Food Mkt., Inc. v. Hicks*, 111 S.W.3d 610, 613 (Tex. App.-Houston [1st Dist.] 2003, pet. denied) (quoting *Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex.1992)) (internal quotation marks omitted). Constructive knowledge, which is defined as knowledge that a person, after reasonable inspection, ought to have or has reason to have, may be imputed when the premises owner-operator had a reasonable opportunity to discover and

to remedy an allegedly dangerous condition. *Reece*, 81 S.W.3d at 814; *Hall v. Sonic Drive–In of Angleton, Inc.*, 177 S.W.3d 636, 645 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

Farrar attached four deposition transcripts to his response, including his own and Marshall's. Farrar testified that on the day he slipped, the ramp was exposed to the elements and was wet from rain. He had not delivered mail to the building for several weeks prior to the day of his fall, but on that day, he noticed that the wheelchair ramp had been painted. Farrar's uncontroverted deposition testimony was that after he fell, he spoke with Marshall, who told him that the person who had come to check the fire alarm earlier that morning had also slipped on the wheelchair ramp.

Sabine and Northwest argue that Farrar failed to present evidence of actual or constructive knowledge because he did not proffer evidence of a prior fall or a report involving injury. But whether an injury actually occurs prior to an incident is not conclusive on the question of whether the defendant knew or should have known that the condition created an unreasonable risk of harm. *See Safeway Stores, Inc. v. Scamardo*, 673 S.W.2d 371, 373 (Tex.App.-Houston [1st Dist.] 1984, no writ). When there is evidence of notice to a property owner or operator of a prior similar occurrence—here, evidence of Marshall's knowledge of a near fall attributable to the same condition—such evidence is probative as to the question of notice. *See Klorer*, 717 S.W.2d at 760.

We conclude that the record contained more than a scintilla of evidence that Sabine and Northwest had notice of the alleged defect. *See Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 70–71 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) (holding that evidence of prior complaints raised fact

question regarding defendant's actual knowledge); *see also Klorer v. Block,* 717 S.W.2d 754, 760 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.) (holding that evidence of similar incidents is probative as to notice element in premises liability case).

Likewise, " 'The fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge.' " *Hall,* 177 S.W.3d at 645 (citing *Keetch,* 845 S.W.2d at 265). Marshall painted the ramp. She testified that she knew that a painted wheelchair ramp could be slippery because the employees at the hardware store where she purchased the paint instructed her to add sand to it in order to "make [the painted surface] a little more non-slip." Marshall testified that she mixed the paint with sand and painted the concrete surface of the wheelchair ramp. She further testified that afterwards she walked on the ramp to make sure that it was not slippery. Marshall admitted she never tested the slipperiness of the ramp when it was wet even though it was exposed to the elements and she knew that it would be wet if it was raining.

Viewing the evidence in the light most favorable to Farrar, we hold that it was sufficient to raise a question of material fact as to Sabine and Northwest's knowledge of the condition. *See* Tex.R. Civ. P. 166a(i); *Forbes,* 124 S.W.3d at 172.

**2. Condition posed unreasonable risk of harm**

Sabine and Northwest also contend that summary judgment was properly granted because Farrar presented no evidence that the painted wheelchair ramp was unreasonably dangerous. Farrar argues that Sabine and Northwest had a duty to make the wheelchair ramp reasonably safe for people entering and exiting the building. He contends that Sabine and Northwest created an unreasonable risk of harm to persons entering and exiting the building because they painted the wheelchair ramp to make it more visible and the ramp was slippery when wet.

A condition poses an unreasonable risk of harm when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Hall,* 177 S.W.3d at 646 (quoting *Cnty. of Cameron v. Brown,* 80 S.W.3d 549, 556 (Tex.2002)) (internal quotation marks omitted). "Foreseeability in this context 'does not require that the exact sequence of events that produced an injury be foreseeable.' Instead, only the general danger must be foreseeable." *Id.* (quoting *Cnty. of Cameron,* 80 S.W.3d at 556) (internal citations omitted). Evidence of a similar injury or complaint caused by the condition is probative on the question of whether the condition posed an unreasonable risk of harm. *Id.; see also Klorer,* 717 S.W.2d at 761. Whether a particular condition poses an unreasonable risk of harm is generally fact specific, and there is no definitive test for determining whether a specific condition presents an unreasonable risk of harm. *Hall,* 177 S.W.3d at 646 (citing *Reliable Consultants, Inc. v. Jaquez,* 25 S.W.3d 336, 342 (Tex.App.-Austin 2000, pet. denied)).

The deposition testimony attached to Farrar's response demonstrates that it was reasonably foreseeable that an improperly painted wheelchair ramp could be slippery under any weather conditions and that a person entering and exiting the building could be injured if they slipped. Specifically, the hardware store employees informed Marshall that she should mix sand or some other anti-slip additive with the paint before painting the wheelchair ramp because improperly painted concrete surfaces can be slippery. The evidence

also showed that this particular wheelchair ramp was used by people entering and exiting the building and that it was exposed to the elements. Farrar testified that it had been drizzling on the morning of his fall, and his deposition testimony shows that Marshall was aware of at least one complaint that the wheelchair ramp was slippery before he fell.

"[E]vidence of other falls or near falls attributable to the same conditions is recognized as probative evidence in determining whether such condition presents an unreasonable risk of harm...." *Klorer,* 717 S.W.2d at 761. When, as in this case, there is evidence that the similar slips (both Farrar and the man checking the building's fire alarm system complained that they slipped on the painted wheelchair ramp) arose out of the same inanimate cause or condition (both slipped on the painted wheelchair ramp when it was wet from rain), such evidence raises a fact question as to whether the condition presents an unreasonable risk of harm. *See id.*

Sabine and Northwest argue that "the fact that Farrar fell on the ramp does not necessarily lead to the conclusion that the ramp was unreasonably dangerous." While it is true that this evidence is not conclusive, it is probative of the fact that the painted wheelchair ramp was unreasonably dangerous. *Seideneck v. Cal Bayreuther Assocs.,* 451 S.W.2d 752, 754 (Tex. 1970); *Hall,* 177 S.W.3d at 646. Accordingly, we conclude that Farrar's evidence raised a question of material fact as to whether the painted wheelchair ramp created an unreasonable risk of harm.

**3. Owner-operator did not exercise reasonable care**

██ In their motion for summary judgment, Sabine and Northwest argued that there was no evidence to establish that they breached a duty to Farrar. Farrar argued in his response that Sabine and Northwest did not exercise reasonable care to reduce or eliminate the risk of harm to people entering and exiting the building using the painted wheelchair ramp.

██ A defendant breaches its duty of care if it fails to exercise ordinary care to protect the plaintiff from danger by failing to adequately warn the plaintiff of the condition and by failing to make the condition reasonably safe. *See Reece,* 81 S.W.3d at 814; *CMH Homes,* 15 S.W.3d at 101. The duty to use ordinary care toward invitees includes the duty to inspect the premises, and the premises owner-operator is charged with constructive knowledge of any premises defect or other dangerous condition that a reasonably careful inspection would have revealed. *See CMH Homes,* 15 S.W.3d at 101; *Corbin,* 648 S.W.2d at 295. When an owner-operator has notice of a condition on the premises that poses an unreasonable risk of harm, he has a duty to take whatever action is reasonably prudent under the circumstances to reduce or eliminate the unreasonable risk. *Corbin,* 648 S.W.2d at 295.

Marshall's deposition testimony reflects that she knew that people entering and exiting the building could slip and fall on a painted concrete surface. Marshall testified that she had never painted a wheelchair ramp before. She made an effort to make the surface safe by talking with the employees at the hardware store about how she intended to use the paint and by mixing some sand in with it per their instructions, but she did not confirm with them that the work had been done properly. She did not test the ramp in wet and dry conditions, and she did not have the ramp inspected by ACI to confirm that it complied with ADA requirements. Farrar's unobjected-to deposition testimony

showed that at least two people slipped on the ramp when it was wet. Moreover, Marshall and Elkins testified that after Farrar slipped and fell they barricaded the wheelchair ramp for a period of approximately ten days and repainted the surface using paint with a higher sand-to-paint ratio in order to prevent others from slipping. But before Farrar's fall, there was no sign, barricade, or other warning indicating that the painted ramp was slippery when wet. *See TXI Operations, L.P. v. Perry,* 278 S.W.3d 763, 764–65 (Tex.2009).

Taking the proof favorable to Farrar as true, and indulging every reasonable inference and resolving any doubts in his favor, as we must, we conclude that Farrar raised a genuine issue of material fact as to whether Sabine and Northwest failed to exercise reasonable care to reduce or eliminate any unreasonable risk of harm created by the painted wheelchair ramp. *See* TEX.R. CIV. P. 166a(i); *Forbes,* 124 S.W.3d at 172.

**4. Failure to exercise reasonable care proximately caused plaintiff's injuries**

■ Sabine and Northwest argue that Farrar did not present evidence of proximate cause. Farrar argues that he was injured when he slipped and fell on the wet wheelchair ramp and that it was foreseeable that such an injury would occur because an improperly painted wheelchair ramp can become slippery when wet.

■ To prevail in an action for premises liability, an invitee must establish that the defendant's lack of care proximately caused his injuries. *CMH Homes,* 15 S.W.3d at 99; *Hall,* 177 S.W.3d at 647. Proximate cause consists of cause-in-fact and foreseeability. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). A defendant's negligence is the cause-in-fact of the plaintiff's injuries if the negligent act or omis-

sion was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Hall,* 177 S.W.3d at 648. Foreseeability "means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 549–50 (Tex.1985). It requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Hall,* 177 S.W.3d at 648.

Farrar testified during his deposition that he slipped when he was walking up the wheelchair ramp to deliver mail to the building. He further testified that it was raining and that the wheelchair ramp was wet. After he fell he noticed that the back of his clothing was wet. There was also evidence that Marshall never confirmed with the home improvement store employees or other professionals that she had been done the work properly. She did not test the ramp in wet and dry conditions, although the ramp was exposed to the elements and she knew that it would be wet if it was raining, and she did not have the ramp inspected by ACI to confirm that it complied with ADA requirements.

■ In their motion for summary judgment, Sabine and Northwest complained that Farrar had not designated a liability expert to establish foreseeability. While expert testimony under the circumstances might be helpful, it is not required to establish causation "[w]hen a layperson's common understanding and general experience enable her to determine, with reasonable probability, the causal relationship between the event and the condition...." *Towers of Town Lake Condo. Ass'n, Inc. v. Rouhani,* 296 S.W.3d 290, 298–99 (Tex. App.-Austin 2009, pet. denied). Under the circumstances, Farrar's and Marshall's de-

position testimony constitutes some evidence of causation. *See id.* at 299. Because Farrar's testimony that he fell on the painted wheelchair ramp when it was wet from rain, together with Marshall's testimony, raises a question of material fact as to whether Marshall's negligence caused Farrar's fall, we hold that Farrar met his summary judgment burden as to the element of causation. *See* TEX.R. CIV. P. 166a(i); *Forbes,* 124 S.W.3d at 172.

Having concluded that Farrar raised a question of material fact as to each of the elements of premises liability challenged in Sabine and Northwest's no-evidence motion for summary judgment, we hold that the trial court erred in granting summary judgment in favor of Sabine and Northwest, and we sustain Farrar's sole issue.

### Conclusion

We reverse the judgment of the trial court and remand the cause to the trial court for further proceedings in accordance with this opinion.

Justice MASSENGALE, dissenting.

MICHAEL MASSENGALE, Justice, dissenting.

As a matter of law, the natural accumulation of ice or mud does not create an unreasonable risk of harm. *See, e.g., Scott & White Mem'l Hosp. v. Fair,* 310 S.W.3d 411, 419 (Tex.2010); *M.O. Dental Lab v. Rape,* 139 S.W.3d 671, 676 (Tex.2004) (per curiam); *Johnson County Sheriff's Posse, Inc. v. Endsley,* 926 S.W.2d 284, 287 (Tex. 1996); *Brownsville Navigation Dist. v. Izaguirre,* 829 S.W.2d 159, 160–61 (Tex. 1992). The same rule applies to the naturally occurring condition at issue in this case, a surface made wet by rain. No evidence has been produced to show that the wheelchair ramp where appellant Thomas Farrar fell was slippery for any reason other than the natural occurrence of rain. Accordingly, I would affirm the judgment of the trial court because the evidence is insufficient to create a genuine issue of material fact as to whether an unreasonably dangerous condition existed on the premises. TEX.R. CIV. P. 166a(i); *Cnty. of Cameron v. Brown,* 80 S.W.3d 549, 556 (Tex.2002); *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 754–55 (Tex.1970).

In support of his allegation that the slippery painted surface of the wheelchair ramp constituted an unreasonably dangerous condition, Farrar presented evidence that the surface of the ramp was painted three weeks before he fell on it. The surface of the ramp was not tested while wet, and agents of Sabine and Northwest agreed that it should have been so tested. Farrar testified that shortly after his fall, the property manager of the premises told him that a man checking fire alarms earlier on the same day slipped on the ramp. This evidence did not indicate that the ramp was wet at the time of the prior slip, why the man slipped, or that the man fell or suffered any injury. Farrar also presented evidence that he was wearing special-issue postal shoes to help prevent slips and falls. He alleges that when he stepped on the painted surface of the ramp, his feet slipped out from under him, resulting in his injury.

A condition poses an unreasonable risk of harm when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Brown,* 80 S.W.3d at 556; *Seideneck,* 451 S.W.2d at 754. In this context, "foreseeability does not require that the exact sequence of events that produced an injury be foreseeable." *Brown,* 80 S.W.3d at 556. "Instead, only the general danger must be foreseeable." *Id.*

To defeat Sabine and Northwest's no-evidence motion for summary judgment, Farrar was required to produce evidence raising a fact issue as to the existence of an unreasonably dangerous condition. Tex.R. Civ. P. 166a(i). "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–63 (1960)); *see also Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011) (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003)). To be more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). However, "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment." *Seideneck*, 451 S.W.2d at 755 (citing *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898)); *see also Guerra*, 348 S.W.3d at 228.

As explained below, none of the evidence produced by Farrar creates anything more than suspicion that the painted surface of the wheelchair ramp was an unreasonably dangerous condition.

**1. Creation of condition.** Farrar identifies the fact that Sabine and Northwest created the condition of a freshly painted surface on the wheelchair ramp as an important consideration in determining whether there was an unreasonably dangerous condition on the premises. Certainly the fact that the owner and occupier of the building were responsible for the painting of the ramp is relevant to their actual or imputed knowledge of the condition. But the mere fact that Sabine and Northwest controlled the painting of the wheelchair ramp is not probative as to the likelihood that a pedestrian might have been injured when the wheelchair ramp inevitably became wet from rain. *See Brown*, 80 S.W.3d at 556.

Likewise, none of Farrar's evidence about how the wheelchair ramp was painted tends to show that a dangerous condition resulted. Farrar contends that Sabine and Northwest used "a paint that enhanced the normally occurring slipperiness of rain water on a concrete surface," but he produced no evidence of this. The evidence showed only that the "safety paint" used to paint the ramp was purchased from a hardware store, and that employees at the hardware store suggested that sand or gravel should be mixed with the paint to create traction and prevent slipping. The evidence showed that sand was mixed in the paint before it was used to paint the ramp. No evidence was presented of the amount of sand used, or to show that it was an insufficient amount of sand to make the paint safe for its intended use. No evidence was presented to show the properties of the paint used on the wheelchair ramp, either with or without the sand, to demonstrate that the paint did or did not enhance "the normally occurring slipperiness of rain water on a concrete surface." No evidence was presented to show any standard for measuring the surface traction of a wheelchair ramp to determine, based on the incline of the ramp, whether it is safe for pedestrian

traffic, nor was any evidence presented to show how the surface traction and incline of the ramp in question compared to any such standard. *Cf. Brinson Ford, Inc. v. Alger,* 228 S.W.3d 161, 162 (Tex.2007) (per curiam) (plaintiff's expert evaluated risk of harm arising from pedestrian ramp by reference to the Texas Accessibility Standards, http://www.tdlr.state.tx.us/AB/tas/abtas.htm, and the American Society for Testing and Materials's *Standard Practice for Safe Walking Surfaces* ). *See generally* GARY M. BAKKEN ET AL., SLIPS, TRIPS, MISSTEPS AND THEIR CONSEQUENCES 13–32 (2d ed. 2007). No evidence was shown of the coefficient of friction between the painted wheelchair ramp surface and Farrar's shoes. *See* BAKKEN ET AL., *supra,* at 13–32. In short, the evidence of the mere fact that the wheelchair ramp was recently painted was completely inadequate to demonstrate that an unreasonably dangerous condition resulted from the work. *See, e.g., Seideneck,* 451 S.W.2d at 755 ("[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment").

**2. Failure to test.** Farrar also relies on Sabine's and Northwest's admitted failure to test the wheelchair ramp under wet conditions. If there were a dangerous condition on the premises, evidence of a failure to test a painted surface created by the owner and occupier of the property would be relevant to the question of whether ordinary care had been exercised to reduce or eliminate the risk of harm. But the failure to test is not itself evidence that the condition was dangerous. *See id.*

**3. Prior incident.** Evidence of a similar injury or complaint attributable to the same condition is probative on the question of whether the condition posed an unrea-

sonable risk of harm. *See id.* at 754; *Hall v. Sonic Drive–In of Angleton, Inc.,* 177 S.W.3d 636, 646 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). However, in this case, the only evidence of a similar injury or complaint is Farrar's own testimony that Marshall told him that a man checking the building's fire alarm system had also slipped on the ramp earlier the same morning. The panel majority's misleading reference to "two complaints that the wheelchair ramp was slippery when wet" includes Farrar's own complaint and erroneously suggests that the first complaint attributed a slip to a wet or slippery ramp when the evidence showed no such thing.

Apart from being potentially hearsay (the evidence does not indicate whether Marshall was speaking based on her personal knowledge, or in her capacity as an agent of Sabine, or whether she was simply repeating a statement by the fire-alarm tester), the evidence was inadequate to demonstrate a sufficiently similar injury or complaint. The evidence did not indicate that the earlier incident involved a fall, that the wheelchair ramp was wet at the time, or that the other man attributed his slip to the surface being slippery due to rain or some other reason. *See Seideneck,* 451 S.W.2d at 754 ("evidence of other falls attributable to the same condition … would be probative"); *Hall,* 177 S.W.3d at 646. This weak evidence of one prior slip under unknown conditions was therefore inadequate to raise a genuine issue of material fact as to the existence of an unreasonably dangerous condition. *See Seideneck,* 451 S.W.2d at 755.

**4. Fact of plaintiff's own fall.** Farrar relies upon the evidence of his own fall, the manner in which he fell, and the fact that he wore shoes designed to prevent falls as evidence that the wheelchair ramp was unreasonably dangerous. However, the mere fact that a person slips is not, by

itself, proof of an unreasonably dangerous premises condition. "[T]he fact an accident happens is no evidence that there was an unreasonable risk of such an occurrence. . . ." *Thoreson v. Thompson*, 431 S.W.2d 341, 344 (Tex.1968); *see also Dickson v. J. Weingarten, Inc.*, 498 S.W.2d 388, 389 (Tex.Civ.App.-Houston [14th Dist] 1973, no writ); *H.E.B. Food Stores, Inc. v. Flores*, 661 S.W.2d 297, 300 (Tex.App.-Corpus Christi 1983, writ dism'd); *Ogueri v. Texas S. Univ.*, No. 01–10–00228–CV, 2011 WL 1233568, at *5 n. 4 (Tex.App.-Houston [1st Dist] Mar. 31, 2011, no pet.) (mem. op.) (citing *Eubanks v. Pappas Restaurants, Inc.*, 212 S.W.3d 838, 840–41 (Tex. App.-Houston [1st Dist] 2006, no pet)) ("The mere fact that [plaintiff] slipped does not, by itself, prove that the condition of the floor posed a foreseeable, unreasonable risk of harm."); *Smylie v. First Interstate Bank, Tex.*, No. 14–99–00713–CV, 2000 WL 1707308, at *2 (Tex.App.-Houston [14th Dist.] Nov. 16, 2000, no pet.). Farrar likewise presented no evidence to demonstrate that either the manner of his fall or the fact that he fell while wearing postal shoes was indicative of an unreasonably slippery surface. Accordingly, none of this evidence raises a fact issue as to the dangerousness of the ramp's surface.

**5. *Subsequent remedial measures.*** Finally, Farrar also submitted, and he relies upon, evidence of subsequent remedial measures undertaken with respect to the wheelchair ramp after his injury. This evidence is not admissible for the purpose of demonstrating the liability of Sabine and Northwest, *see* Tex.R. Evid. 407(a), and accordingly it should not be given any weight in our no-evidence review. *See, e.g., Havner*, 953 S.W.2d at 711 (a "no evidence point will be sustained when . . . the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact"); *Guerra*, 348 S.W.3d at 228.

\*　　\*　　\*

In sum, the evidence presented by Farrar does not amount to any more than a scintilla of evidence that the painted wheelchair ramp was unreasonably slippery or otherwise constituted an unreasonably dangerous condition. Because Farrar failed to satisfy his burden to come forward with summary judgment evidence raising a genuine issue of material fact as to this element of his claim, no-evidence summary judgment was properly granted. For that reason, I respectfully dissent.