**Opinion issued January 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-17-00843-CV

———————————————

**ANGELA CARTER, Appellant**

**V.**

**TARANTINO PROPERTIES, INC., Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-57423**

---

## MEMORANDUM OPINION

Appellant Angela Carter, a tenant in a Houston Housing Authority apartment complex managed by appellee Tarantino Properties, Inc., asserted a premises liability claim against Tarantino based on her allegation that the glass cover of an improperly installed bathroom light fixture fell and cut her wrist. The trial court

granted Tarantino's traditional motion for summary judgment on Carter's premises liability claim and denied Carter's motion for new trial. Carter appeals those rulings.

## Background

In early January 2014, Carter moved into the Irvington Village Apartments, a public housing project owned by the Houston Housing Authority.[1] Tarantino began managing the apartment complex on February 1, 2014. On June 25, 2014, while Carter was in the process of closing her bathroom medicine cabinet, the glass cover (or glass shade) for the light fixture fell and cut her right wrist. Broken glass also cut her leg. Carter's daughter called 9-1-1, and Carter was taken by ambulance to a hospital where her wrist wound was sutured and her leg wound was cleaned. Because of subsequent numbness and painful swelling in her right hand, a hand physician sent Carter to physical therapy. According to Carter's summary-judgment affidavit, since her wrist was cut, she has suffered numbness and painful swelling in her right hand and has been unable to perform a number of daily tasks that she was able to perform before she was injured.

With its traditional motion for summary judgment on Carter's premises liability claim, Tarantino included, among other items, the following summary-judgment evidence: Carter's deposition and the affidavits of Tarantino employees

---

[1] Carter also sued the Houston Housing Authority, which obtained summary judgment and a severance of Carter's claims.

Rachel Chavez and Sal Thomas. Carter's response to Tarantino's motion included the affidavits of Carter and of Frank Rogers, her electrical expert, and Tarantino's discovery responses.

The trial court granted Tarantino's traditional motion for summary judgment,[2] and Carter then filed a motion for new trial as to that ruling. The trial court denied that motion, and Carter appealed. Appearing pro se on appeal and proceeding as an indigent, Carter asserts in two issues that the trial court erred in granting Tarantino's traditional motion for summary judgment and in denying her motion for new trial.

We affirm.

## Analysis

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant has the burden of showing that no genuine issue of material fact exists and that it is therefore entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment must conclusively negate at least one essential element of the plaintiff's cause of action. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

---

[2]    Tarantino also filed a no-evidence motion for summary judgment on Carter's negligence claims. The trial granted the no-evidence motion, but Carter does not complain on appeal about that ruling.

In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756. In our review, we take the competent evidence favorable to the nonmovant as true. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2005).

The elements of an invitee's premises liability claim are:

(1) the plaintiff was an invitee;

(2) the defendant was a possessor of the premises;

(3) a condition of the premises created an unreasonable risk of harm to the plaintiff;

(4) the defendant knew or reasonably should have known of the condition (actual or constructive knowledge);

(5) the defendant failed to exercise ordinary care to protect the invitee from danger by failing to adequately warn the plaintiff of the condition or by failing to make the condition reasonably safe; and

(6) the defendant's failure was a proximate cause of injury to the plaintiff.

*See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 753–54 (Tex. 1970).

4

Tarantino moved for summary judgment on elements three through six. We begin with the fourth element: the threshold issue of Tarantino's actual or constructive knowledge of the alleged dangerous condition. *See Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 700 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996)); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 644 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (same).

"The duty owed by an owner or occupier of premises to an invitee is not that of an insurer." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000). An invitee must establish that the defendant knew or should have known of the condition that posed an unreasonable risk of harm. *Moreno*, 201 S.W.3d at 688; *Farrar*, 362 S.W.3d at 700; *Hall*, 177 S.W.3d at 644. A possessor's knowledge of a dangerous condition can be actual or constructive. *Del Lago Partners*, 307 S.W.3d at 769. Carter does not contend that Tarantino had actual knowledge of the alleged dangerous condition, nor is there summary-judgment evidence that Tarantino had actual knowledge.

Constructive knowledge is "what a person after a reasonable inspection ought to know or have reason to know." *Duncan v. First Tex. Homes*, 464 S.W.3d 8, 16 (Tex. App.—Fort Worth 2015, pet. denied) (citing *Lopez*, 929 S.W.2d at 3–4); *see also Seideneck*, 451 S.W.2d at 754 ("[B]ecause the owner or occupier is

5

charged with knowledge of any dangerous condition that a reasonable inspection would have revealed, the plaintiff must show as a matter of law or through a finding of fact that the owner 'knew or should have known of the existence of the condition and that he should have appreciated its dangers.'"). "'The inviter . . . will not be held liable for defects which would not have been disclosed by a reasonably careful inspection, even though no such inspection has been made.'" *Kansas City So. R.R. v. Guillory*, 376 S.W.2d 72, 76 (Tex. Civ. App.—Beaumont 1964, writ ref'd n.r.e.) (quoting 65 C.J.S. *Negligence* § 51).

> Because the core of the duty [to an invitee] depends on actual or constructive knowledge of a dangerous condition that a reasonable inspection would reveal, it follows that an owner or occupier is not liable for deterioration of its premises unless it knew of or by reasonable inspection would have discovered the deterioration.
>
> Many building materials will, over time, deteriorate and require repair or replacement. That does not necessarily mean that the owner or occupier has created a dangerous condition or that the owner has actual or constructive knowledge of a dangerous condition.

*Daenen*, 15 S.W.3d at 101 (citations omitted).

Carter's premises liability claim is that the bathroom light fixture was "jerry-rigged"—it was improperly attached to the wall with just one nail, and when the light fixture became dislodged, its glass cover fell off, breaking and cutting Carter. Carter asserts that when Tarantino employee Rachel Chavez inspected Carter's apartment on April 11, 2014, she should have discovered that the light fixture was

6

improperly installed and thus a dangerous condition. Chavez's inspection report does not indicate that she inspected the light fixture.

Carter's expert Rogers stated in his summary-judgment affidavit that, in his opinion, the fixture had been improperly installed by securing it to the wall with a nail. Rogers opined that if a "reasonable, proper visual and physical inspection" of the fixture had been done between February 1, 2014 and June 25, 2014, "any reasonable inspector would have determined that that lighting fixture was not securely attached to the bathroom wall" and that it needed to be replaced. Rogers further opined that if Chavez did not inspect the light fixture, she should have inspected it because it was an "older-type lighting fixture" that would have "flagged the attention of any reasonable inspector to properly inspect it."

Regarding constructive knowledge, Tarantino first notes that it was not the property manager and did not perform the move-in inspection in January 2014, when Carter moved in. Next, Tarantino highlights that Carter's own testimony establishes that an inspection would not have detected the alleged dangerous condition and that no one had any reason to suspect a problem with the fixture or its cover.

Specifically, Carter testified that the alleged dangerous condition was not visible because the light fixture itself was covering the nail. She testified that she saw the light fixture daily for about five months, and the alleged problem was

never visible until the light fixture came down "because the light fixture was covering the problem." Carter testified that "you couldn't see anything wrong with it. It was perfect. It looked perfect to me until it came down on me." She testified that the cover to the light fixture had never come off before. Carter also admitted in her brief that the condition of the base of the light fixture (attached to the wall with "an old nail"), which she characterized as "jerry-rigged", was "imperceptible."

Carter viewed the light fixture in her bathroom multiple times a day and never saw anything unusual: it never looked like it was coming off the wall, nor did it look out of place. Neither the fixture nor its cover ever appeared broken, hanging, or loose. Carter said that she opened and closed the medicine cabinet below the light fixture daily because she kept her toothbrush and toothpaste in it. When she closed the medicine cabinet, the fixture did not make any sound, such as a rattling sound, indicating that it was loose. Nothing about the light fixture or its cover concerned Carter. She further admitted that nothing would indicate to her or anybody else that there was anything wrong with the light fixture. In the approximately five months that Carter lived in the apartment before the incident, she never reported to Tarantino any incidents or complaints regarding the light fixture or cover.

Carter's own testimony establishes that the alleged dangerous condition—the single nail affixing the light fixture's base to the wall above the medicine cabinet—was concealed, and therefore a visual inspection of the light fixture would not have detected how the base of the light fixture was affixed to the wall. Further, Carter's testimony establishes that the only way to determine that the light fixture had been improperly installed would have been to detach it from the wall, and Carter's expert is silent on how a visual or physical inspection would have revealed the alleged improper installation. His statement that "any reasonable inspector would have determined that that lighting fixture was not securely attached to the bathroom wall" is conclusory, and a "conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment." *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003). Also, Carter's expert fails to state that, in the absence of any complaints or problems with the light fixture, a reasonable inspection would have included detaching the light fixture from the wall to make a determination of proper installation.

Because Carter's summary-judgment evidence does not raise a fact issue on Tarantino's constructive knowledge of the alleged dangerous condition, and because Tarantino's summary-judgment evidence establishes that no genuine issue of material fact exists on its constructive knowledge, Tarantino has disproved, as a matter of law, the constructive-knowledge element of Carter's premises liability

9

claim. The trial court properly granted Tarantino's traditional motion for summary judgment on Carter's premises liability claim. *See Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (summary judgment proper if defendant disproves at least one element of plaintiff's claim). We therefore overrule Carter's two issues.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.