# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00034-CV

**Towers of Town Lake Condominium Association, Inc., Appellant**

**v.**

**Venus Rouhani, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-05-000345, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

Towers of Town Lake Condominium Association, Inc. ("the Association") appeals from a judgment awarding Venus Rouhani damages plus post-judgment interest and costs based on a jury verdict in Rouhani's favor in her suit for negligence arising out of her fall near a swimming pool owned and operated by the Association. The Association challenges the legal sufficiency of the evidence supporting (1) the jury's finding that the Association had knowledge of the condition that caused Rouhani's fall, (2) the jury's finding that the Association's negligence proximately caused Rouhani's fall, and (3) the amount of damages the jury found that Rouhani suffered for loss of future earning capacity. The Association also complains that the trial court erred by not submitting its requested jury instruction on unavoidable accident. We will affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2004, Venus Rouhani, a practicing dentist, attended her niece's birthday party at the Towers of Town Lake Condominiums. During the party, Rouhani was sitting in a chair near the indoor swimming pool when she was splashed with water from the pool. Getting up to move to a chair away from the splashing water, she took two or three steps, slipped, and fell onto the concrete deck of the swimming pool, landing on her back and right shoulder. The pool deck was made out of stamped concrete that had, over the preceding seven years, been painted with six coats of enamel paint.

Rouhani testified that, although she did not notice whether or not there was water on the pool deck where she fell, after her fall she noticed that the pool deck felt cold, as it would if wet, and that the back of her shirt and the back of her pants were wet. Rouhani's sister, Jinous Rouhani, witnessed the fall. According to Jinous, the children in the pool were splashing water and there was water on the deck around the pool.

Rouhani sued the Association, which owned and managed the common areas at the Towers of Town Lake Condominiums, including the indoor pool area, asserting a premises liability theory of liability. Rouhani claimed that the concrete pool deck, covered with six layers of enamel paint, was a condition of which the Association was aware and that posed an unreasonable risk of harm to her. Rouhani alleged that the Association failed to exercise ordinary care to protect her from the danger presented by this condition on the premises and that such failure caused her to suffer an injury.

The case was tried to a jury. At trial, Barry Smith, the Association's manager, testified that the poolside decks for both the indoor and outdoor pools were made out of stamped concrete. Smith testified that while the outdoor concrete deck was left unpainted, the Association painted the indoor poolside deck with latex-enamel paint six times in the previous seven years. According to Smith, the indoor pool deck was painted for aesthetic reasons, and safety was not a consideration when making the decision to paint the indoor pool deck. The paint used to cover the pool deck had a label and technical data sheet that warned that floor enamels may become slippery when wet, and that clean sand may be added when non-skid characteristics are desired. The Association did not add sand or any other non-slip additive to the paint. Bill Coltharp, a professional engineer with training regarding walking-surface safety, testified that there are paints specifically intended for poolside decks. Coltharp stated that he believed it was not appropriate for the Association to use the latex-enamel paint with no anti-slip additive on a poolside deck. Coltharp testified that National Spa and Pool Institute Standards state that the deck around a pool is to be "slip resistant." Coltharp testified that, in his opinion, the Association did not meet this industry standard because it did not take action to make the pool deck slip resistant. Coltharp further testified that the Association violated provisions of the Texas Administrative Code regarding pool safety by not doing anything proactive to keep the poolside deck from being slippery.

As a result of the fall, Rouhani suffered a comminuted fracture of her right humerus. Rouhani underwent physical therapy and was able to return to her dental practice in July 2005. The injury continued to interfere with her ability to practice dentistry, however, because her right arm would get fatigued and she had limited range of motion in that arm. In the autumn of 2005, as a

result of the injury, Rouhani developed avascular necrosis of the humerus, a progressive disease in which the bone dies because of a disruption in its blood supply. Rouhani was advised by her doctors that her condition was permanent and that she would be unable to practice dentistry. Consequently, Rouhani sold her dental practice in February 2006. Dr. Tom Glass, a certified public accountant with a doctorate degree in economics, testified regarding Rouhani's lost earning capacity resulting from her inability to practice dentistry. Glass, who had been in practice for more than 37 years and had experience valuing dental practices, testified that he had reviewed Rouhani's profit and loss statements and income tax statements and conducted research regarding earning potential for full-time practicing dentists in the area. Glass testified that the present value, after deduction for projected actual earnings and taxes, of Rouhani's loss of future earning capacity was $902,297.

The jury found that the Association was negligent and that its negligence proximately caused Rouhani's injuries. The jury found $900,000 in damages for loss of future earning capacity. The jury also found $100,000 for past physical pain and mental anguish, $200,000 for future physical pain and mental anguish, $67,000 for past lost earnings, $100,000 for past physical impairment, $200,000 for future physical impairment, and $70,000 for future medical expenses. The trial court denied the Association's post-trial motions and rendered judgment in Rouhani's favor. The trial court reduced the award of future medical expenses to $21,000 and found that Rouhani's past medical expenses were $26,259.76. The trial court rendered judgment for Rouhani in the amount of $1,654,663.50 plus post-judgment interest and costs. The Association perfected this appeal.

By its first two issues, the Association asserts that (1) there was no evidence that the Association owed a duty to Rouhani because there was no evidence that it had actual or constructive

4

knowledge of an unreasonably dangerous condition, and (2) there was no evidence that the condition caused Rouhani's fall and, therefore, her injury. By its third issue, the Association contends that the evidence presented is not legally sufficient to support the damages award for loss of future earning capacity because the expert testimony regarding Rouhani's loss of future earning capacity was conclusory or speculative. By its fourth issue, the Association argues that the trial court erred by refusing to submit a jury instruction on unavoidable accident.

**STANDARDS OF REVIEW**

In a legal sufficiency challenge, we review the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We sustain a legal sufficiency challenge if the record reveals: (1) the complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id*. at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

We review the trial court's decision to submit or refuse a particular instruction under an abuse-of-discretion standard. *See In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). A trial court is afforded more discretion when submitting instructions than when submitting questions. *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied).

5

Indeed, the supreme court has held that trial courts have "considerable discretion to determine necessary and proper jury instructions." *Texas Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 911 (Tex. 2000). When a trial court refuses to submit a requested instruction, the reviewing court must determine whether the requested instruction was reasonably necessary to enable the jury to render a proper verdict. *See* Tex. R. Civ. P. 277; *Mandlbauer*, 34 S.W.3d at 912. The omission of an instruction constitutes reversible error only if the omission probably caused the rendition of an improper judgment. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (citing *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003)); *see* Tex. R. App. P. 44.1(a).

## DISCUSSION

Rouhani alleged that she was an invitee on the Association's premises when her injury occurred and sought to hold the Association liable under a premises liability theory. The Association does not dispute that she had the status of an invitee. The elements of a premises liability case by an invitee are:

(i)     the owner/operator of the premises had actual or constructive knowledge of some condition on the premises;

(ii)    the condition posed an unreasonable risk of harm;

(iii)   the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(iv)    the owner/operator's failure to use such care proximately caused the injury.

*See Keetch v. Kroger*, 845 S.W.2d 262, 264 (Tex. 1992); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983); *see also CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99

6

(Tex. 2000). Rouhani slipped on the pool deck adjacent to the indoor pool. Rouhani contended at trial that the Association knew that the pool deck surface was coated with six layers of enamel paint and that the condition of the pool deck posed an unreasonable risk of harm.

### Knowledge of Unreasonably Dangerous Condition

The deck around the pool where Rouhani fell was made out of stamped concrete and had been painted with latex-enamel paint six times in the seven years preceding Rouhani's fall. The paint used to coat the pool deck was latex floor and patio enamel recommended by the manufacturer for "interior and exterior use on unpainted concrete (new or old) and previously finished wood or concrete floors." The label on the paint can included the following warning: "**Caution:** All floor enamels may become slippery when wet. Where non-skid characteristics are desired, a small amount of clean sand may be added." The technical data sheet provided by the manufacturer contained a similar warning: "CAUTION: All floor enamels may become slippery when wet. Where non-skid characteristics are desired, a small amount of M67 Anti-Slip Aggregate may be added." The Association did not add sand or an anti-slip aggregate to the paint used to coat the pool deck.

Bill Coltharp, the engineer retained as an expert by Rouhani, testified that while this paint arguably could be used for a pool deck, it was not a paint specifically recommended for that purpose. Coltharp further testified that concrete surfaces are "fairly well known to be slippery when wet, particularly when they're painted," and that the paint applied by the Association to the pool deck did not have an anti-slip additive in it. Coltharp stated that every time the concrete surface is painted, "it makes it more slippery," and "the more coats of paint you put on it, the more likely it is to become even more slippery."

It is common knowledge that a pool deck is an area that will often, if not usually, become wet when the pool is being used. The evidence supports the conclusion that by using this type of enamel paint, without an anti-slip additive, in an area that will usually be wet when people are present—either from splashing or from swimmers getting into and out of the pool—the Association created a condition that posed an unreasonable risk of harm to those walking on the pool deck.

The Association argues that the enamel-painted pool deck, when dry, is not itself an unreasonably dangerous condition, and that there was no evidence that the spot where Rouhani slipped was wet. The Association contends that Rouhani was required to introduce evidence that the very spot on which she slipped was wet, and without evidence of a "specific instance of wetness contemporaneous with and in the location of [her] fall," there is no evidence of any unreasonably dangerous condition. To support this contention, the Association relies upon *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406 (Tex. 2006). In *Brookshire*, the plaintiff slipped on a piece of partially melted ice that had fallen on the floor near an ice dispenser. 222 S.W.3d at 407. The supreme court held that the dangerous condition was not the ice dispenser itself, but the melting ice on the floor. *Id.* at 409. The Association argues that the enamel-painted pool deck is simply the legal equivalent of the ice dispenser: "capable of producing a dangerous condition," but not a dangerous condition itself. We disagree. The dangerous condition here is a pool deck surface that is (1) slippery when wet, and (2) usually wet when swimmers are present. Unlike the occasional ice cube that falls from the ice dispenser onto the floor and creates a condition that, if discovered by the premises owner, could be corrected (by picking up the ice and drying the floor), it is anticipated and

8

expected that a pool deck will be wet whenever the pool is being used. Barry Smith, the Association's general manager, testified that he knew the area where the paint was applied would get wet frequently and also testified that he knew that parties would be held around the pool and that "water gets splashed." Accordingly, we believe the owner and operator of premises that include a swimming pool has a duty to ensure that the area around the pool has a surface that is not unreasonably slippery when wet, a condition that is not merely foreseeable but to be expected. A poolside surface that is slippery when wet is a dangerous condition that creates an unreasonable risk that a visitor will fall. *Compare H. E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218, 219 (Tex. 1999) (display of loose grapes in recessed bowl on rimmed table on non-skid floor surrounded by mats and cones not unreasonably dangerous condition), *with Corbin*, 648 S.W.2d at 296 (display of grapes in slanted bin over linoleum tile floor with no protective floor mat created unreasonable risk of customer falls from grapes). The evidence in this case was legally sufficient for the jury to find that the deck surface Rouhani slipped on was unreasonably dangerous in that it was slippery under expected poolside conditions.

Even if, as the Association argues, the dangerous condition is not the slippery-when-wet poolside deck itself, but a particular wet area on the enamel-painted deck that rendered the deck slippery, there is legally sufficient evidence to support the jury finding of negligence. Rouhani testified that she got up to move from her seat because she was being splashed with water from the pool. She thought the splashing was either from a "water gun or just splashing water out of the pool," and she felt the splash. It is reasonable to infer that the water splashing from the pool, some of which hit Rouhani, also landed on the pool deck. The notion that *all* the water splashed from the

9

pool landed on Rouhani and *none* landed on the floor in the area in which she was sitting is not an inference that may reasonably be drawn from the evidence. In addition, Rouhani stated that, as she was lying on the deck after she slipped, she noticed the back of her shirt and pants were wet and also noticed that the floor felt cold. Finally, Rouhani's sister testified that children playing in the pool were splashing water and that there was water on the deck around the pool. This evidence is sufficient to support a finding that the pool deck where Rouhani slipped was wet.

The Association contends that there was no evidence that it had actual or constructive notice of the dangerous condition that caused Rouhani to fall. We reject this argument. The evidence establishes that the Association was responsible for having the pool deck painted six times in seven years with enamel paint that did not contain the recommended anti-slip additive. Consequently, the Association was aware of the unreasonably dangerous condition—a pool-side deck surface that was slippery when wet—because it had created that condition. *See Keetch*, 845 S.W.2d at 265 (fact that owner or occupier of premises created condition that posed unreasonable risk of harm supports inference of knowledge). Moreover, even were we to agree with the Association that the unreasonably dangerous condition was the water on the painted deck, Mr. Smith's testimony was sufficient to support a finding that the Association had constructive knowledge that the pool deck area was frequently wet when people were using the pool. *See City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 537 (Tex. 1996) (jury could infer City knew there would be water on floor where there was evidence that person in charge of recreation center knew of leaks in roof and knew it had been raining). Here, the Association knew that, when people were using the pool, water would often be splashed out of the pool onto the poolside deck such that the

10

area where the enamel paint was applied would frequently be wet. We conclude that the record contains more than a scintilla of evidence that the Association had constructive knowledge of water on the pool deck.

Finally, the Association argues that there is legally insufficient evidence that Rouhani's fall was caused by the slippery poolside deck surface. The Association argues that the testimony of Rouhani's expert witness, Bill Coltharp, who testified that Rouhani's fall was caused by the slick and slippery painted deck surface, was speculative and conclusory, and was nothing more than conjecture, guess, or speculation. As the Association correctly notes, a finding of cause-in-fact may be based on either direct or circumstantial evidence. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). Proximate cause may be established by such evidence and the reasonable inferences that may be drawn therefrom. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903-04 (Tex. 1980).

Coltharp's opinion that the pool deck's surface caused Rouhani to fall is not so speculative or conclusory that it could not support the jury finding. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231-32 (Tex. 2004) (factually unsubstantiated bare opinions constitute no evidence); *Ford Motor Co.*, 135 S.W.3d at 600 (opinion that something is "suspected of having caused" fire in engine compartment along with concession that "actual cause of the fire has not been determine[d] yet" was not sufficient to raise fact issue). Coltharp's testimony did not constitute either a bare opinion or mere speculation about the cause of Rouhani's fall. Rather, he based his opinion regarding the cause of the fall both on an inspection of the pool deck where Rouhani fell and a review of the material used to coat the surface of the deck. His opinion

11

that the pool deck surface was smooth and slick was based on his personal inspection of the deck. He noted that the surface was smooth and that the paint applied to the deck did not have any anti-slip qualities. Coltharp testified regarding the particular enamel paint used and opined that this paint was not one specifically intended for pool decks. In his opinion, the application of several layers of this paint without an anti-slip additive covered the small "points" that would ordinarily make an unfinished concrete surface rough. This created a smooth surface with nothing to grab on to the sole of a shoe. Coltharp testified that the slick, smooth, wet surface, without anti-slip treatment, caused Rouhani to slip and fall. Coltharp provided the basis for his opinion, which was grounded in his observations combined with his expertise. Consequently, his testimony provided more than a surmise or suspicion and could, on its own, provide legally sufficient evidence that the poolside deck surface was slippery, and because the surface was slippery, Rouhani fell when she stepped on the deck in order to avoid being splashed with water.

Moreover, the evidence is sufficient to support a finding of causation even without Coltharp's testimony. Rouhani testified that she slipped when she got up to move away from water splashing from the pool that got her wet. Rouhani further testified that after she fell she felt the pool deck surface and it was as slick as a marble floor or tile on a kitchen floor that has no grooves to prevent slipping. Rouhani's sister also testified that she examined the area where the fall occurred the next day and it was slippery. When a layperson's common understanding and general experience enable her to determine, with reasonable probability, the causal relationship between the event and the condition, proof other than expert testimony will constitute some evidence of causation. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006); *Lenger v. Physician's Gen. Hosp., Inc.*,

12

455 S.W.2d 703, 706 (Tex. 1970) (trier of fact allowed to decide issue of causation).  Such is the case here.  A layperson could reasonably determine that there was a causal link between the slick pool deck surface and Rouhani's fall.  The jury could reasonably conclude that Rouhani fell because, while moving away from the water being splashed from the pool, she slipped on the wet enamel-painted surface of the pool deck.  Even without Coltharp's testimony, the jury finding is supported by legally sufficient evidence.

We overrule the Association's first and second issues.

### *Award of Damages for Loss of Future Earning Capacity*

In its third issue, the Association contends that the evidence is legally insufficient to support the jury finding that Rouhani suffered damages for loss of future earning capacity in the amount of $900,000.  In order to establish the amount of her loss of future earning capacity, Rouhani offered the expert testimony of an economist and certified public accountant, Dr. Tom Glass.  The Association did not object to Glass's expert testimony at trial, and therefore has waived any complaint regarding the methodology, technique, or foundational data Glass used in forming his opinion.  *Coastal Transp. Co.*, 136 S.W.3d. at 229.  On appeal, the Association argues that Glass's opinions are conclusory and speculative and consequently do not constitute probative evidence supporting a finding of lost future earning capacity.  *See id.* at 232 (expert testimony that is conclusory and lacking explanation is legally insufficient).  A review of the record, however, reveals that Glass's opinion regarding Rouhani's future earning capacity was supported by his review of the evidence combined with economic assumptions that he explained to the jury.

13

Glass testified that he had prior experience valuing dental practices. Glass reviewed Rouhani's earnings history, business records, including profit and loss statements, and tax returns. Glass's testimony included an explanation of how he calculated Rouhani's future earning capacity. The Association's own expert, Ken Huff, agreed with much of Glass's analysis, including the schedules used and data from the profit and loss statements; the two differed with respect to Glass's assumption that Rouhani's practice would experience net income growth of 20% per year until 2010. Glass's assumption regarding net income growth was supported by historical data showing that Rouhani's practice had, in fact, experienced an average annual net income growth rate of 34% over the past four years: a 100% increase in 2000-2001; a 60% decrease in 2001-2002; a 45% increase in 2002-2003; and a 50% increase in 2003-2004. Thus, his assumption of future growth was not based on pure speculation, but rather was supported by historical data. Moreover, Glass did not project unending growth, but opined that Rouhani's practice would grow until it leveled out at the median income level for dentists practicing in the area.[1] While the Association's expert and Glass made different assumptions regarding the future income projections, each expert's opinion was based on the application of economic assumptions to historical data. Glass's assumptions were not unreasonable and provided legally sufficient evidence to support the jury's finding regarding loss of future earning capacity. We overrule the Association's third issue.

---

[1] The Association takes issue with Glass's reliance on "survey data" showing that a Central Texas dentist could earn between $150,000 and $160,000 per year. However, by not objecting at trial, the Association has waived any complaints about the foundational data Glass relied upon in forming his opinion. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) (when reliability challenge asks court to evaluate foundational data used by expert, objection must be timely made so trial court has opportunity to conduct analysis).

*Instruction on Unavoidable Accident*

By its fourth issue, the Association contends that the trial court erred in refusing to submit a requested jury instruction on unavoidable accident. Texas Rule of Civil Procedure 277 provides that "the court shall submit instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. As long as the charge is legally correct, we review a trial court's decision to submit or not submit jury instructions under an abuse-of-discretion standard. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). When submitting the jury charge, the trial court is afforded more discretion when submitting instructions than when submitting questions. *Wal-Mart Stores, Inc.*, 982 S.W.2d at 470. A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 619-20 (Tex. 2007). To reverse a judgment based on a claimed error in the jury charge, a party also must show that the error "probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1); *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006).

An unavoidable accident is "an event not proximately caused by the negligence of any party to it." *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex. 1995). The purpose of an unavoidable-accident instruction is to "advise the jurors, in the appropriate case, that they do not have to place blame on a party to the suit if the evidence shows that conditions beyond the party's control caused the accident in question or that the conduct of some person not a party to the litigation caused it." *Dillard v. Texas Elec. Co-op*, 157 S.W.3d 429, 432 (Tex. 2005) (citing *Reinhart*, 906 S.W.2d at 472). It is also within the judge's discretion to submit an unavoidable accident

15

instruction when the evidence supports the conclusion that no one was negligent. *See Bed, Bath & Beyond*, 211 S.W.3d at 760 (Brister, J., concurring).

An unavoidable-accident instruction must, however, be supported by the evidence. *Hicks v. Brown*, 151 S.W.2d 790, 792 (Tex. 1941); *Hukill v. H.E.B. Food Stores, Inc.*, 756 S.W.2d 804, 843-44 (Tex. App.—Corpus Christi 1988, no writ). The instruction is proper only when there is evidence that the event was proximately caused by a condition beyond the defendant's control and not by the negligence of any party to the event. *Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 803 (Tex. 1992). If the evidence shows that conditions beyond the party's control caused the accident in question or that the conduct of some person not a party to the litigation caused it, an unavoidable-accident instruction may be warranted. *See Dillard*, 157 S.W.3d at 432 (unavoidable-accident instruction appropriate where defendant claimed accident was caused by cows on road). When there is no evidence that the accident was caused by some such peculiar circumstance not associated with the negligence of either party, submission of the instruction is generally not warranted. *See Hicks*, 151 S.W.2d at 792.

We note that the supreme court has held that there is no harm in explaining to the jury through an unavoidable-accident instruction that the standard broad-form negligence question should not be read to imply that an occurrence was caused by *someone's* negligence. *See Dillard*, 157 S.W.3d at 433. Additionally, one supreme court justice has advised that a trial court does not err by submitting an unavoidable-accident instruction advising the jury that "accidents may be nobody's 'fault' in the legal sense" when there is evidence to support that conclusion. *See Bed, Bath & Beyond*, 211 S.W.3d at 760 (Brister, J., concurring). Significantly, though, while the supreme

16

court has held that the trial court may, in its discretion, submit the instruction under such circumstances, it has not held that it is an abuse of discretion not to do so. The decision to submit or refuse a requested instruction on unavoidable accident remains within the trial court's broad discretion. *See Wal-Mart Stores, Inc.*, 982 S.W.2d at 470. In this case, the evidence showed that Rouhani slipped on the slick enamel-painted surface of the pool deck. There was no evidence tending to show that Rouhani's fall was caused by some unexpected condition beyond the Association's control or knowledge, or that it was due to the act of some person not a party to the litigation. We conclude that, under these circumstance, the trial court did not abuse its discretion by refusing to submit a jury instruction on unavoidable accident.

Moreover, even assuming that the Association was entitled to an instruction on unavoidable accident, we conclude that the trial court's refusal to include the instruction in its charge was not harmful. In conducting a harmless-error analysis, we consider whether the trial court's error "probably caused the rendition of an improper judgment." *Bed, Bath & Beyond*, 211 S.W.3d at 757; *see also* Tex. R. App. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; . . . ."). To determine whether the submission or refusal to submit an instruction probably resulted in an improper judgment, we review the entire record. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). In this case, there was substantial evidence to support the jury's finding that the Association was negligent in failing to ensure that the poolside deck surface was not unreasonably slippery and that Rouhani fell as a result of slipping on the unreasonably dangerous surface. Furthermore, we disagree

17

with the Association's argument that, in the absence of the instruction, "the jury was not permitted to consider that Dr. Rouhani's fall was no one's fault." Rather, the broad-form question asked the jury whether "the negligence, *if any*" of either Rouhani or the Association caused the accident and instructed the jury to "[a]nswer 'Yes' or 'No' for each." While the supreme court has stated that there is "at least a potential implication in this phraseology that the occurrence *was* caused by *someone's* negligence," *see Dillard*, 157 S.W.3d at 433 (citing *Hill*, 849 S.W.2d at 805 (Hecht, J., dissenting)), the broad-form question does not *require* that the jury ascribe fault to one of the two parties listed. Rather, it plainly permits the jury to answer affirmatively or negatively for each.

Thus, the jury's finding that the Association was negligent is cogently supported by the evidence. Moreover, had the jury believed that the fall was not due to the negligence of either Rouhani or the Association, it could have answered "No" to the negligence question with respect to each party. Accordingly, even if the Association had been entitled to an instruction on unavoidable accident, we would not be able to say that the trial court's refusal to include the instruction probably resulted in an improper judgment. We overrule the Association's fourth issue.

## CONCLUSION

Having overruled the Association's four appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   August 31, 2009