**Reversed and Remanded and Memorandum Opinion filed February 28, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00130-CV

### DREVER WATERSTONE, L.P. AND CONCIERGE ASSET MANAGEMENT, LLC, Appellants

### V.

### JACQUELINE RHODES, Appellee

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2011-39329**

## M E M O R A N D U M   O P I N I O N

In this appeal from a no-answer default judgment, appellants Drever Waterstone, L.P. ("Drever") and Concierge Asset Management, LLC ("CAM"), assert that the trial court erred in denying their motion for new trial. Because Drever and CAM sufficiently established that their failure to answer was not intentional or the result of conscious indifference, we reverse and remand.

# BACKGROUND

Appellee Jacqueline Rhodes sued Drever, CAM, and Waterstone Place, an apartment complex in Stafford, Texas, on June 30, 2011. She sued these defendants under a negligence theory for personal injury she allegedly sustained at the Waterstone Place apartments. Specifically, Rhodes alleged the following facts as the basis of her claim:

> On or about August 22, 2010, while on Defendants' premises located at 516 Stafford Springs Ave., Stafford, Texas, Plaintiff, Jacqueline Rhodes, suffered serious and permanent bodily injury as a direct result of an occurrence caused by a dangerous condition on Defendants' premises that Defendants and/or their respective agents, servants, employees knew of or in the exercise of ordinary cause [sic], should have known existed. Defendants and their agents, servants, and employees negligently allowed the creation and continued existence of this condition, so as to make Defendants' premises a dangerous place. Further, Defendants, by act and/or omission, failed to warn Plaintiff of the condition on the premises, despite the fact Defendants and their agents, servants and employees knew or in the existence of ordinary care, should have known of the existence of the condition and the likelihood that this condition would cause serious injury to inivitees, to whom Defendants owed a non-delegable duty of care.

The record reflects that Drever's and CAM's registered agent was served with the suit and citation on July 12, 2011. When Drever and CAM failed to answer the suit, Rhodes moved for default judgment on liability on August 22, 2011. The trial court granted Rhodes's interlocutory default judgments on liability against these defendants on September 14, 2011. On October 21, the trial court conducted a post-default hearing on damages. The trial court signed what purported to be a final judgment on October 24, 2011, finding Drever and CAM jointly and severally liable for damages to Rhodes in the amount of $382,127.59, plus post-judgment interest.

Drever and CAM filed a verified motion to set aside the default judgment and motion for new trial (the "motion") on January 20, 2012. In this motion, they argued that they were entitled to a new trial because their failure to appear and answer was not intentional or the result of conscious indifference. In support of this argument, they attached affidavits from Claudia Crocker, their registered agent; Jenifer Paneral, CAM's senior vice president and chief operating officer; and Janet Medrano, an insurance broker for Drever and CAM with knowledge of this matter.

In her affidavit Crocker swore to the following. On July 12, 2011, she received a copy of Rhodes's petition and citations for Drever and CAM. That same day, her legal assistant emailed them to CAM's controller, Scott Vance, via email. On September 23, 2011, she received a postcard from the Harris County District Clerk directed to CAM stating that an interlocutory default judgment had been entered against it on September 14, 2011. Her legal assistant forwarded this postcard, via email, to Vance on September 26. On October 31, 2011, Crocker received a second postcard notice from the Harris County District Clerk that an interlocutory default judgment had been entered against Drever and CAM on October 24. Her legal assistant forwarded this notice, again via email, to Vance on October 31. She was not notified by anyone prior to January 17, 2012 that a final default judgment had been entered against Drever and CAM.

Paneral attested to the following in her affidavit. Drever owned the Waterstone Place apartments at the time of the alleged accident made the basis of this suit. CAM managed the day-to-day operations of these apartments. On July 12, 2011, Paneral received an email from CAM's controller, Vance, which included copies of Rhodes's petition and citations to Drever and CAM. That same day, using her iPad, she sent an email to Drever's and CAM's insurance broker,

Janet Medrano. As was her "regular practice," it was her intention to forward the suit papers to Medrano for "further handling and appointment of defense counsel to represent CAM's and Drever's interests." At the time she sent the email to Medrano, she intended to forward Rhodes's petition and the citations to Medrano, and she believed that her email transmission included these documents as attachments. Although Paneral's email did not include the suit papers as attachments, the "string of prior emails [in this email] referenced the citations." She did not discover until January 17, 2012, that the petition and citations were not attached to this email to Medrano.[1]

Finally, Medrano provided the following information in her affidavit. On July 12, 2011, she received an email from Paneral, in which Paneral stated that she believed the "Rhodes claim" had been settled last year and requested that Medrano check her files. The subject line to and the inquiry in this email referenced only the Rhodes claim; the email had no attachments.[2] Medrano reviewed her loss data report and quickly responded to Paneral by emailing her that the Rhodes claim remained open. Because Medrano never received the petition and citations for this suit, she was unaware of the Rhodes proceedings. Medrano first learned about the default judgment on January 18, 2012. At no time before January 18, 2012 was

---

[1] Paneral further attested that: (1) on September 26, 2011, Crocker's legal assistant emailed Vance a copy of the postcard notice regarding the interlocutory declaratory judgment entered against CAM on September 14; (2) on October 31, Crocker's legal assistant emailed Vance a copy of the second postcard notice regarding the interlocutory judgment entered against CAM and Drever on October 24, 2011; and (3) neither she, nor any other employee of CAM or Drever, was notified by anyone prior to January 17, 2012 that a final default judgment had been entered against CAM and Drever.

[2] Paneral did not respond further to Medrano's update. An earlier email from Crocker's legal assistant to CAM's controller, Vance, referencing "citations regarding *Criaco v. Waterstone One* addressed to Drever Waterstone and one addressed to CAM" was contained within the body of the July 12, 2011 email. Medrano believed that the Criaco matter was unrelated to the Rhodes claim. She later discovered that Criaco was Rhodes's attorney.

she or any other employee of the insurance agency notified that a final default judgment had been entered against CAM and Drever.

Drever and CAM also asserted in their motion that they had a meritorious defense to Rhodes's claims. They attached employee affidavits to their motion, setting out the factual basis of a meritorious defense to Rhodes's premises-liability claim. These affidavits established that the defendants lacked actual or constructive knowledge of a dangerous condition on their property potentially giving rise to liability. Finally, Drever and CAM alleged that granting a new trial would not injure Rhodes because they promptly filed their motion after learning that the default judgment had been entered against them, they stood ready to participate in all necessary hearings and a trial on the merits, and they offered to reimburse Rhodes for her reasonable and necessary costs incurred in obtaining the default judgment. Rhodes responded to the motion, asserting only that Drever's and CAM's failure to answer resulted from conscious indifference.

Rhodes's notice of nonsuit as to Waterstone Place was signed by the trial court on January 23, 2012, rendering the previously entered default judgment against Drever and CAM final that day. On January 31, 2012, the trial court denied Drever's and CAM's motion to set aside the default judgment and motion for new trial.[3] This appeal timely ensued.

## ANALYSIS

In their first issue, Drever and CAM assert that the trial court retained plenary jurisdiction to entertain their motion for new trial because they did not receive actual notice of the final judgment in this case until January 2012. In their second issue, they contend that the trial court erred in denying their motion

---

[3] Drever and CAM subsequently filed a motion to reconsider, which was denied by the trial court on February 14, 2012.

5

because they satisfied the *Craddock*[4] requirements for granting a new trial after entry of a no-answer default judgment.

## A.     Plenary Jurisdiction of the Trial Court

As noted above, the trial court signed a final default judgment against Drever and CAM on October 24, 2011.[5]  At that time, Waterstone Place was still a named defendant in the case.  The October 24, 2011 default judgment does not dismiss or otherwise dispose of any claims against Waterstone Place and specifically references only Drever and CAM.  Rhodes filed a notice of nonsuit as to Waterstone Place on January 23, 2012, which was signed by the trial court that same day.  Until this nonsuit was signed, the default judgment rendered against Drever and CAM was interlocutory.  *See In re Burlington Coat Factory Warehouse of McAllen*, 167 S.W.3d 827, 829 (Tex. 2005) (orig. proceeding) (stating that there is no presumption of finality following a summary or default judgment); *In re Bro Bro Props., Inc.*, 50 S.W.3d 528, 530 (Tex. App.—San Antonio 2000) (orig. proceeding) (determining that default judgment failing to dismiss or otherwise dispose of claims against some defendants was not a final judgment).  Thus, the trial court had plenary power to set aside the default judgment and grant a new trial at the time their motion was filed and for thirty days from January 23, 2012, the date that the nonsuit rendered the default judgment final.  *See* Tex. R. Civ. P. 329b(a), (d).  Accordingly, Drever and CAM's first issue is without merit and is overruled.

---

[4] *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

[5] The judgment states, "All relief requested by Plaintiff, but not expressly granted herein, is hereby denied."  However, such "Mother Hubbard" clauses are not an indication of finality in the absence of a trial on the merits.  *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203–04 (Tex. 2001).

**B.** *Craddock* **Motion for New Trial**

We review a trial court's refusal to grant a new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). A trial court is required to set aside a default judgment and grant a new trial if (1) the defendant's failure to answer before judgment was not intentional or the result of conscious indifference on his part, but was due to a mistake or accident, (2) the motion sets up a meritorious defense, and (3) granting the motion will "occasion no delay" or otherwise injure the plaintiff. *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (quoting *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939)). If a defaulting parting moving for new trial meets the *Craddock* test, a trial court abuses its discretion by failing to grant a new trial. *Id.* Because adjudication on the merits is preferred, new trials should be liberally granted when the *Craddock* elements are met. *See Holt Atherton Inds., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992); *Titan Indem. Co. v. Old S. Ins. Grp., Inc.*, 221 S.W.3d 703, 708 (Tex. App.—San Antonio 2006, no pet.).

**1. Failure to Answer**

We look to the knowledge and acts of the defendants to determine whether they satisfied their burden regarding the first *Craddock* element. *Dir., State Emp. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994). A defendant satisfies its burden regarding this element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant, and the factual assertions are not controverted by the plaintiff. *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (per curiam). Consciously indifferent conduct occurs when "the defendant knew it was sued but did not care." *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006).

7

Generally, "some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care." *R.R.*, 209 S.W.3d at 115. As described above, Drever and CAM attached three affidavits to their motion to establish that they were not "consciously indifferent": one from their registered agent, Crocker, one from CAM's senior vice president and chief operating officer, Paneral, and one from CAM's and Drever's insurance broker, Medrano. These affidavits establish that CAM's personnel received Rhodes's original petition, but unintentionally did not attach the petition to an email to their insurance broker as was their usual practice. Rhodes did not controvert CAM's and Drever's evidence that Paneral inadvertently failed to attach the suit papers to her email to Medrano, who was responsible for the handling and appointment of defense counsel to represent CAM's and Drever's interests. Rhodes further did not controvert Medrano's affidavit testimony that she never received the suit papers attached to the email she received from Paneral and thus was unaware of the suit.[6] This excuse, if true, negated intentional or consciously indifferent conduct on their part. *See Sutherland*, 376 S.W.3d at 755–56. Thus, the trial court's denial of Drever's and CAM's motion for new trial cannot be affirmed on the ground that their excuse for not answering was insufficient.[7]

---

[6] *Cf. Ferguson & Co. v. Roll*, 776 S.W.2d 692, 697 (Tex. App.—Dallas 1989, no writ) ("[W]hen a defendant's excuse is his reliance on a third party to file his answer or to notify him of a trial setting, he must prove that the third party's failure was due to accident or mistake and not intentional or the result of conscious indifference.").

[7] CAM's controller, Vance, and senior vice president and chief operating officer, Paneral, both received notices that interlocutory default judgments had been taken against CAM and Drever and did nothing. However, all of these notices were received *after* the default judgment on liability was signed. Vance's and Paneral's failure to act on these notices does not factor into our *Craddock* analysis because only those actions taken *before* judgment are considered. *Craddock*, 133 S.W.32d at 126 ("[T]he failure of the defendant to answer *before* judgment was not intentional or the result of conscious indifference on his part, but was due to a mistake or an

## 2. Meritorious Defense and No Injury to Plaintiff

Regarding Drever's and CAM's meritorious defense, as detailed above, Rhodes alleged that she was an invitee injured by a dangerous condition on the defendants' premises about which the defendants knew or should have know, *i.e.*, a premises-liability claim by an invitee. Such a claim requires, among other things, that the owner/operator of the premises had actual or constructive knowledge of the condition on the premises. *See Towers of Town Lake Condo. Ass'n, Inc. v. Rouhani*, 296 S.W.3d 290, 295 (Tex. App.—Austin 2009, pet. denied). Drever and CAM attached employee affidavits to their motion setting up the defense of lack of actual or constructive knowledge of the alleged condition on the premises. *See id.* In other words, they set up a meritorious defense in their motion, and the trial court's denial of their motion cannot be affirmed on the ground that they failed to do so.

Turning to the injury prong of the *Craddock* test, CAM and Drever asserted in their motion that granting a new trial would not injure Rhodes. "Once a defendant has alleged that granting a new trial will not injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff." *Evans*, 889 S.W.2d at 270. Rhodes has not disputed this element of the *Craddock* test, either in her response to the motion or on appeal. Further, as discussed *supra*, Drever and CAM filed their motion *before* a final judgment was rendered in this case. They filed their motion promptly after learning that a default judgment had been granted against them. In their motion, they advised the trial court that they were ready to participate in all necessary hearings and a trial on the merits. Finally, Drever and CAM offered to reimburse Rhodes for her reasonable and necessary

---

accident[.]" (emphasis added)). Rhodes also references several other "notices" that were allegedly sent to CAM or Drever, but none of these "notices" were provided during the critical post-citation, pre-judgment timeframe pertinent to our *Craddock* analysis. *See id.*

costs incurred in obtaining the default judgment. Injury to a plaintiff may be negated by an offer in the motion for new trial to pay costs incurred by a plaintiff in obtaining the default judgment. *E.g.*, *Europa Cruises Corp. v. AFEC Int'l*, 809 S.W.2d 783, 787 (Tex. App.—Houston [14th Dist.] 1991, no writ). The trial court's denial of Drever's and CAM's motion cannot be affirmed on the ground of injury to the plaintiff.

We conclude that Drever and CAM have satisfied each component of *Craddock*. Accordingly, we hold that the trial court abused its discretion in denying their motion for new trial and sustain their second issue.

## CONCLUSION

Because the trial court abused its discretion in denying Drever's and CAM's verified motion to set aside the default judgment and motion for new trial, we have sustained their second issue. We reverse the trial court's judgment and remand for a new trial.

/s/    Adele Hedges
        Chief Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.