**Opinion issued February 11, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00295-CV

———————————

**ANTHONY BARLOW, Appellant**

**V.**

**BUC-EE'S, LTD., INDIVIDUALLY AND D/B/A BUC-EE'S AND BUC-EE'S,**
**Appellees**

---

**On Appeal from the 207th District Court**
**Comal County,[1] Texas**
**Trial Court Case No. C2017-1825B**

---

## MEMORANDUM OPINION

---

[1]    The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

In this slip-and-fall case, appellant Anthony Barlow appeals from the trial court's order granting summary judgment in favor of appellees, Buc-ee's, Ltd., individually and d/b/a Buc-ee's and Buc-ee's, on Barlow's premises liability claim. In one issue, Barlow contends that the trial court erred in granting summary judgment because a genuine issue of material fact exists as to whether (1) Buc-ee's had actual or constructive knowledge of an unreasonably dangerous condition on its premises that caused him to fall; (2) Buc-ee's failed to exercise ordinary care to protect him from the danger by warning him adequately of the condition; and (3) the condition was open and obvious. We affirm.

**Background**

In August 2016, Barlow visited the Buc-ee's store in New Braunfels, Texas, on his way to a training session for work. Barlow testified that it was drizzling on the day of his visit and the cement outside was visibly wet. As he exited the store to return to his car, he walked through a handicapped parking stall adjacent to the store's entry sidewalk. When Barlow stepped on one of the parking lot's painted stripes, he slipped and fell, injuring his leg.

In 2017, Barlow filed suit against Buc-ee's asserting a claim for premises liability. Barlow alleged that Buc-ee's had created an unreasonably dangerous condition by striping its parking lot surface with a paint that became unreasonably

slippery when in contact with water. According to Barlow, he slipped and fell, injuring himself as a result of the dangerous condition.

Following the completion of discovery, Buc-ee's filed a no-evidence and traditional motion for summary judgment. In its combined motion, Buc-ee's argued that summary judgment was proper because Barlow had failed to produce a scintilla of probative evidence showing (1) the existence of a condition posing an unreasonable risk of harm; (2) that Buc-ee's knew or reasonably should have known of the danger; and (3) that Buc-ee's failed to exercise ordinary care to protect Barlow from the danger by failing to warn him adequately of the condition and making the condition reasonably safe. In support of its motion for summary judgment, Buc-ee's attached Barlow's original petition, Buc-ee's answer, the transcript of Barlow's deposition, video footage from Buc-ee's New Braunfels store, and the affidavit of JJ Justilian, Buc-ee's Claims Manager.

Barlow responded to Buc-ee's summary judgment motion, arguing that Buc-ee's choice of parking lot paint and its failure to inspect or test the paint created fact questions on the elements of "knowledge" and "unreasonable risk of harm." Barlow also argued there was sufficient evidence that Buc-ee's failed to warn of the danger posed by the paint, and further that Buc-ee's "open and obvious" defense was inapplicable under the facts of the case. In support of his summary judgment response, Barlow attached excerpts from his deposition as well as excerpts and

3

accompanying exhibits from the deposition of Richard A. Sebastian, Buc-ee's designated representative.

Sebastian, Buc-ee's Senior Director of Operations, testified that Buc-ee's uses a Sherwin Williams low-voc acrylic traffic-marking paint for its parking lots because it is the paint used and recommended by the Texas Department of Transportation ("TxDoT"), which Buc-ee's considers an expert on the subject. Sebastian testified that Buc-ee's began using the recommended Sherwin Williams paint before he began his employment at Buc-ee's two-and-a-half years ago. Buc-ee's parking lots, including its handicap parking stalls, are re-striped every six months. Sebastian testified that Buc-ee's general managers and assistant general managers perform inspections of the property, including the parking lots, daily, at least twice a day, regardless of inclement weather, and that Buc-ee's immediately addresses any safety hazards created by weather or other conditions.

Sebastian testified that Buc-ee's had re-striped the parking lot where Barlow fell approximately three months earlier and placed a yellow cone warning of wet conditions outside the store's entrance on the day Barlow fell. Sebastian testified that on average, 4,000 to 6,000 customers visit the New Braunfels store per day and that since he started working at Buc-ee's, millions of patrons have visited the New Braunfels store. He testified that there have been no slip and falls in the parking lot, either on wet or dry paint, at any of Buc-ee's stores.

Barlow responded to Buc-ee's motion relying primarily on a "performance tip" contained in the paint information sheet supplied by Sherwin Williams. Barlow argued that the performance tip warned Buc-ee's that the paint "would become extra slippery when exposed to liquids such as rain" and cautioned Buc-ee's against its use in "high pedestrian areas."

Buc-ee's replied to Barlow's summary judgment response, asserting that Barlow had not shown that an unreasonably dangerous condition existed, but only that Barlow had fallen and that Buc-ee's had used the paint as recommended. Alternatively, Buc-ee's argued that even if the parking lot stripe could be considered a dangerous condition, the condition was open and obvious thus precluding Barlow's claim.

The trial court granted Buc-ee's no-evidence and traditional motion for summary judgment. This appeal followed.

## Premises Liability Claim

Barlow contends that the trial court erred in granting summary judgment because he presented more than a scintilla of evidence that Buc-ee's had knowledge of an unreasonably dangerous condition on its premises. He also argues that the "open and obvious" defense does not apply when, as here, the hazard is concealed.

## A. Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no-evidence motion, we need not analyze the arguments raised in the traditional summary judgment motion. *Id.*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of the claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Forbes, Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* at 172 (quoting *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotation omitted)). More than a scintilla exists if it would

allow reasonable and fair-minded people to differ in their conclusions. *Id.* Unless the nonmovant raises a genuine issue of material fact, the trial court must grant summary judgment. TEX. R. CIV. P. 166a(i).

A party who files a no-evidence summary judgment motion pursuant to Rule 166a(i) essentially requests a pretrial directed verdict. *Mack Trucks*, 206 S.W.3d at 581. We review the evidence presented by the summary judgment record in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

When reviewing a traditional summary judgment motion, we take as true all evidence favorable to the nonmovant, and we indulge in every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating*, 164 S.W.3d at 661 (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When, as here, the trial court's order does not state the grounds for the court's decision, we must uphold the judgment if any of the theories advanced in the motion are meritorious. *Providence Life*, 128 S.W.3d at 216.

## B. Applicable Law

Generally, premises owners owe a duty to protect invitees from, or warn them of, conditions posing unreasonable risks of harm if the owners knew of the conditions or, in the exercise of reasonable care, should have known of them. *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (citing *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764–65 (Tex. 2009)).[2] To prevail on a premises liability claim against a property owner, an injured invitee must establish that (1) a premises condition created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from the danger; and (4) the owner's failure was a proximate cause of injury to the invitee. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 883 (Tex. 2009); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). The threshold requirement in a premises liability claim is the existence of actual or constructive knowledge of an unreasonably dangerous condition on the premises. *See Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996).

---

[2] An invitee is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Hillis v. McCall*, 602 S.W.3d 436, 440 n.6 (Tex. 2020) (quoting *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 536 (Tex. 1975)). The parties agree that Barlow was an invitee.

8

The standard of care required of the owner toward its invitees is the ordinary care that a reasonably prudent person would exercise under the same or similar circumstances. *Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 699 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983)). While a premises owner is not an insurer of its invitees' safety, it must protect invitees from conditions on the property that present an unreasonable risk of harm. *Brinson Ford, Inc. v. Alger,* 228 S.W.3d 161, 162–63 (Tex. 2007).

## C. Analysis

In its summary judgment motion, Buc-ee's challenged the first, second, and third elements of Barlow's premises liability claim. To avoid summary judgment, Barlow was therefore required to present more than a scintilla of evidence that a premises condition posed an unreasonable risk of harm, Buc-ee's had actual or constructive knowledge of the condition, and Buc-ee's failed to take reasonable care to reduce or eliminate the risk. *See CMH Homes*, 15 S.W.3d at 99.

On appeal, as in his summary judgment response, Barlow contends that Buc-ee's choice of paint created an unreasonable risk of harm to its customers and Buc-ee's knew or should have known of the condition. In support of his contention, Barlow asserts that Buc-ee's used a paint in its parking lot that includes a "warning" that "the paint would become extra slippery when exposed to liquids such as rain"

9

and that advises against its use in large areas subject to pedestrian traffic, including traffic stalls, because it would become slippery when wet.

A condition poses an unreasonable risk of harm when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 646 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (quoting *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)). "Foreseeability in this context 'does not require that the exact sequence of events that produced an injury be foreseeable.'" *Id.* "Instead, only the general danger must be foreseeable." *Brown*, 80 S.W.3d at 556. A condition will not be deemed unreasonably dangerous simply because it is not foolproof. *Brinson Ford*, 228 S.W.3d at 163. A plaintiff may prove notice by establishing that the defendant actually knew the condition was dangerous or that it is more likely than not that the condition existed long enough to give the owner a reasonable opportunity to discover it. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). Evidence of a similar injury or complaint caused by the condition is probative on the questions of whether the condition posed an unreasonable risk of harm and notice. *See Farrar*, 362 S.W.3d at 700–01.

The summary judgment record includes the product information sheet for the traffic-marking paint used by Buc-ee's in its parking lot. The information sheet,

upon which Barlow primarily relies, identifies the paint as a "Traffic & Zone Product." It specifically states that the paint is "[d]eveloped for use over concrete, asphalt, brick, and other surfaced areas." The product sheet then lists "Recommended Uses" for the paint, among them: striping contractors and parking lots. There is no evidence that Buc-ee's used the paint contrary to specifications or that Buc-ee's failed to mix or apply the paint as indicated. To the contrary, it is undisputed that Buc-ee's used the paint to stripe its concrete parking lot, and consequently, that it used the paint for one of the manufacturer's listed recommended uses.

The product information sheet includes the following performance tip: "Painted surfaces can become slippery when wet. Zone Marking paints are not intended for use as floor paints and should not be used to paint large areas subject to pedestrian traffic. For instance, painting an entire traffic stall is not recommended." Barlow argues that this performance tip is a "warning" that put Buc-ee's on notice that the "paint would become extra slippery when exposed to liquids such as rain" and "cautioned" Buc-ee's against its use in "high pedestrian areas," including traffic stalls.

Contrary to Barlow's assertion, the product information sheet does not advise that the paint "would become extra slippery when exposed to liquids such as rain," but only that painted surfaces *can* become slippery when wet. Nor does the

11

information sheet warn against general use of the paint in traffic stalls. Instead, it cautions against using it to paint an *entire* parking stall. Barlow does not allege, nor does the evidence suggest, that Buc-ee's painted an entire parking lot stall with the paint but, rather, the evidence shows that it used the paint for parking lot stall stripes. Moreover, as noted, the information sheet lists parking lots as one of the product's "recommended uses,"[3] and it provides instructions on how to tint the paint to create "Handicap Blue" paint, indicating that Buc-ee's used the paint for its intended purpose.

Barlow also presented no evidence that anyone had previously slipped and fallen on the paint stripes at the New Braunfels store or at any of Buc-ee's other stores. While not conclusive, evidence of prior falls or a report involving injury attributable to the same condition is probative evidence on the question of whether the owner knew or should have known about a condition that posed an unreasonable risk of harm. *See Farrar*, 362 S.W.3d at 700–01 (quoting *Klorer v. Block*, 717 S.W.2d 754, 760–61 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.)). Sebastian testified that an average of 4,000 to 6,000 customers visit the New Braunfels store daily, that hundreds of millions of customers have visited its stores in Texas, and

---

[3] The information sheet cautions against using the paint "over uncured asphalt surfaces such as commonly found on tennis courts, asphalt driveways, and some parking lots." Barlow does not contend—nor is there any evidence—that Buc-ee's parking lot was such a surface.

12

that no one has slipped and fallen on either wet or dry paint in the parking lot at any of the Buc-ee's stores. *See, e.g.*, *Shoemaker v. Kohl's Dep't Stores, Inc.*, 05-16-00273-CV, 2017 WL 1192797, at \*3–4 (Tex. App.—Dallas Mar. 31, 2017, no pet.) (mem. op.) (noting absence of summary judgment evidence showing that anyone was previously injured in customer service area of store or anywhere else in affirming no-evidence summary judgment on premises liability claim); *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767–68 (Tex. App.—San Antonio 2011, no pet.) (concluding there was no evidence of condition that posed unreasonable risk of harm where depressions in aggregate walkway made of pebbles and concrete had existed for more than eighteen years and plaintiff presented no evidence of other falls or complaints attributable to condition). There is also no evidence that any customer had complained that the paint at the New Braunfels store was slippery. *See Brinson Ford*, 228 S.W.3d at 163 (holding car dealership's pedestrian ramp did not pose unreasonable risk of harm where evidence showed, among other things, that no other customer visiting property over ten-year period had ever been injured by ramp and dealership had received no complaints about ramp's safety); *Dietz*, 398 S.W.3d at 767–68. Further, nothing in the record suggests that the use of traffic-marking paint in parking lots is unusual. *See Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970) (finding no evidence of unreasonably dangerous condition where plaintiff did not establish offending rug was defective or unusual).

In fact, Sebastian testified that Buc-ee's chose that particular paint because TxDoT uses and recommends the paint.

In support of his argument that Buc-ee's knew or should have known that an unreasonably dangerous condition existed, Barlow relies on *Towers of Town Lake Condominium Ass'n v. Rouhani*, 296 S.W.3d 290 (Tex. App.—Austin 2009, pet. denied). In that case, the plaintiff sued a condominium association asserting a premises liability claim after she slipped and fell on the concrete deck of the condominium's indoor swimming pool, injuring herself. *See id.* at 293. The plaintiff claimed that the concrete pool deck, covered with six layers of enamel paint, posed an unreasonable risk of harm to her. *See id.* The jury found in the plaintiff's favor, and the trial court rendered judgment on the jury's verdict. *See id.* at 294. The Austin Court of Appeals affirmed the trial court's judgment, concluding that the evidence was sufficient for the jury to find that the deck surface on which the plaintiff had slipped was unreasonably dangerous and that the association had constructive knowledge of the dangerous condition. *See id.* at 297–98.

*Rouhani* is distinguishable from the case before us in several respects. There, the plaintiff presented evidence that the National Spa and Pool Institute Standards state that the deck around a pool is to be "slip resistant," the label on the paint used by the association as well as the technical data sheet provided by the manufacturer stated that sand or an anti-slip aggregate could be added where no-skid

characteristics were desired, and the paint applied by the association did not have an anti-slip additive in it. *See id.* at 293–94. The plaintiff presented expert testimony that there were paints specifically intended for poolside decks, and that the paint used by the association was "not a paint specifically recommended" for use on a pool deck. *See id.* at 294, 296. The plaintiff's expert testified that, in his opinion, it was not appropriate for the association to use the latex enamel paint with no anti-slip additive on a poolside deck, and the association did not meet the industry standard because it did not take action to make its pool deck slip resistant. *See id.* at 294.

By contrast, Barlow presented no evidence that Buc-ee's use of the traffic-marking paint fell below industry standards or that it used the paint in a non-recommended manner. Instead, the paint's product information sheet demonstrated that the paint was manufactured, designed, and intended for use in parking lots. The product information sheet also did not include any advice regarding how to make it non-slip or non-skid, and Barlow presented no evidence regarding whether an additive would have made the paint less slippery or whether another paint would have been less slippery.

Barlow's reliance on *Farrar v. Sabine Management Corp.*, 362 S.W.3d 694 (Tex. App.—Houston [1st Dist.] 2011, no pet.) is equally unavailing. In that case, the plaintiff, a postal worker, sued the defendants for premises liability after he

slipped and fell on the wet, recently painted wheelchair ramp at one of their properties. *See id.* at 697. The trial court granted the defendants' no-evidence summary judgment motion, and the plaintiff appealed. *See id.* at 698. This Court reversed the trial court's grant of summary judgment, concluding that the evidence raised a fact issue as to whether the painted wheelchair ramp created an unreasonable risk of harm, the defendants knew of the condition, and the defendants failed to exercise reasonable care to reduce or eliminate any unreasonable risk of harm. *See id.* at 700–04.

The summary judgment evidence in *Farrar* showed that the hardware store employees from whom the property manager purchased the paint advised her that she should mix sand or gravel with the paint before applying it to the outdoor surface to create traction and prevent slipping. *See id.* at 697. The evidence also showed that after the plaintiff told the property manager that he had slipped and fallen on the wheelchair ramp, the manager told him that a man checking the building's fire alarm system had also slipped on the ramp earlier that morning. *See id.* at 698. We concluded that evidence showing that similar slips arose out of the same inanimate cause or condition raised a fact question as to whether the condition presented an unreasonable risk of harm and whether the defendants had notice of the defect. *See id.* at 700–02. Here, there is no evidence that anyone slipped on any parking lot stripe at the New Braunfels store. There is also no evidence that the paint

16

manufacturer suggested the use of additives to prevent slips.  Further, we note that the fact that Barlow fell is not, by itself, proof of an unreasonably dangerous condition.  *See Shoemaker*, 2017 WL 1192797, at *3 (citing *Thoreson v. Thompson*, 431 S.W.2d 341, 344 (Tex. 1968) (noting "the fact an accident happens is no evidence that there was an unreasonable risk of such an occurrence; because almost any activity involves some risk of harm.")).

Viewing the evidence in the light most favorable to Barlow, we conclude that there is no evidence that Buc-ee's knew or should have known of an unreasonably dangerous condition at its premises.  Buc-ee's has used the same paint in its parking lot stalls for several years.  There is no evidence of other falls attributable to Buc-ee's choice of paint nor evidence of any complaints that the paint becomes slippery when wet.  While the product information sheet states that painted surfaces can become slippery when wet, this evidence, alone, does no more than create a mere surmise or suspicion.  *See Seideneck*, 451 S.W.2d at 755 ("[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment.").  We conclude that Barlow failed to bring forth evidence that Buc-ee's knew or should have known that its choice of traffic-marking paint created an unreasonably dangerous condition.  We therefore hold that the trial

17

court properly granted Buc-ee's no-evidence motion for summary judgment. *See*

TEX. R. CIV. P. 166(a)(i). We overrule Barlow's issue.[4]

## Conclusion

We affirm the trial court's judgment.


Veronica Rivas-Molloy
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Rivas-Molloy.

---

[4] In light of our conclusion, we need not address Barlow's additional arguments that Buc-ee's failed to warn of the danger posed by the paint and that the "open and obvious" defense is inapplicable under the facts of this case. *See* TEX. R. APP. P. 47.1 (stating appellate court opinions should be as brief as practicable in addressing issues necessary to final disposition).

18